UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>HAIMARK LINE, LTD.,<br><br>　　　　Debtors. | Case No. 15-22180-JGR<br><br>Chapter 11 |
| JEFFREY WEINMAN,<br><br>　　　　Plaintiff,<br>v.<br><br>VANTAGE TRAVEL SERVICES, INC.,<br><br>　　　　Defendant. | Adv. Pro. No. 17-01442-JGR |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

　　　　For over two hundred years, the concept of equality of treatment of creditors has been viewed as the most important principle of American bankruptcy law, rivalled only by the concept of a fresh start for honest but unfortunate debtors. Creditor equality was given a ringing endorsement in the influential 1807 case of *Locke v. Winning,* 3 Mass. 325 (Mass. 1807). The concept of recovery of preferential transfers was found in the 1841, 1867, and 1898 Bankruptcy Acts and continues in today's Bankruptcy Code

**BACKGROUND**

**I.　　Procedural Background**

　　　　On October 30, 2017, Plaintiff Jeffrey Weinman ("Plaintiff") sued to avoid and recover a certain transfer made by Haimark Line, Ltd. ("Haimark Line") to Defendant Vantage Travel Services, LLC ("Vantage") as a preferential transfer pursuant to 11 U.S.C. §§ 547 and 550. Specifically, the Plaintiff seeks to avoid and recover a monetary transfer in the amount of $474,718[1] made by Haimark Line to Vantage on September 10, 2015 (the "Transfer"), during the ninety-day period prior to the filing of the Haimark Line's Chapter 11 bankruptcy petition. The Plaintiff also made a claim under 11 U.S.C. §502(d)

---

[1] The Plaintiff reduced the amount he seeks to recover for reasons not germane to this order from $499,193 to $474,718 (Doc. No. 42 at pp. 2-3).

that the proof of claim filed by Vantage in the Haimark Line case must be disallowed unless Vantage returns the preferential transfer.

Vantage moved for summary judgment. The Plaintiff responded with a cross motion for summary judgment. Vantage responded to the cross motion for summary judgment and the Plaintiff replied. The Court heard oral argument on the cross motions for summary judgment on February 20, 2019.

## II. Factual Background

The pleadings, cross motions for summary judgment, the responses, and the affidavits and documents attached to the cross motions for summary judgment set forth the following undisputed facts. Haimark Line is a Colorado limited liability company formed in May 2014. Prior to ceasing business operations, Haimark Line chartered the cruise ship MS Saint Laurent and sold cabin space allotments to tour agencies and individuals for passage aboard the MS Saint Laurent. Haimark Line did not own its own vessel.

Vantage is a tour operator which entered into several contracts with Haimark Line under which Vantage purchased allotments for cruises scheduled on the MS Saint Laurent. In turn, Vantage would sell those cruise spaces to its own customers.

On June 18, 2015, during its maiden voyage, the MS Saint Laurent collided with a concrete canal lock on the St. Lawrence River, near Massena, New York (the "Allision"). The MS Saint Laurent was severely damaged and unable to sail for a significant time. The Allision caused extensive damage to the ship and injuries to numerous passengers. Thereafter, an insurance dispute arose regarding responsibility for the Allision, which caused Haimark Line to file a Chapter 11 bankruptcy case due to the inability to operate any cruises on the MS Saint Laurent and the losses suffered from the Allision.

Between August 19, 2015, and August 28, 2015, Vantage entered into ten contracts with Haimark Line for allotments on various cruises. Under the terms of the contracts, Vantage was required to pay a deposit ranging from 15-20% of the full contract balance. In August 2015, Vantage paid Haimark Line the amount of $915,288, of which $499,193 was mistakenly paid[2] by Vantage to Haimark Line. Haimark Line put the money in its operating account (Doc. No. 42, Ex. A and C). After discovering the mistake, the parties agreed to apply $416,094 of the $915,288 to deposits which would be due within the following two weeks for other cruise allotments.

On September 10, 2015, Haimark Line wired the remaining $493,193 to Vantage from its general operating account for "the overpayment that was made on MS Saint Laurent products" (Doc. No. 37, Ex. 1, p. 2).

Haimark Line filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Colorado on October 30, 2015, commencing bankruptcy case number 15-22180-SBB, later reassigned to the undersigned.

---

[2] The parties disagree about whether Vantage paid an incorrect invoice. This point is immaterial because the parties agree that Vantage's overpayment was a mistake.

2

On October 6, 2016, an involuntary petition or relief under Chapter 7 of the Bankruptcy Code was filed against Haimark, Ltd., commencing bankruptcy case number 16-19885-JGR. On November 1, 2016, the Court entered its order for relief, thereby creating the Haimark, Ltd. bankruptcy estate. The Plaintiff was appointed Chapter 7 trustee of the Haimark, Ltd. bankruptcy estate.

Vantage filed a proof of claim in the Haimark Line bankruptcy case on March 8, 2016 (Proof of Claim No. 64; the "Proof of Claim"), as an unsecured claim in the amount of $499,868 (Doc. No. 42, Ex. F), which Vantage voluntary reduced to $181,501.10 (Doc. No. 37, p. 7).

On June 27, 2017, and June 28, 2017, the Bankruptcy Court entered orders in the Haimark Line and Haimark, Ltd. bankruptcy cases approving a settlement agreement between the two estates which gave the Plaintiff, as Chapter 7 trustee of the Haimark, Ltd. bankruptcy estate, the sole discretion to pursue and settle avoidance actions on behalf of the Haimark Line bankruptcy estate, with the net proceeds recovered from the avoidance actions to be shared between the Haimark Line and Haimark Ltd. bankruptcy estates.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (B).

## ANALYSIS

### I.   Standard of Review and Burden of Proof

Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(d) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). All of the evidence must be viewed in a light which is most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986).

After the movant carries this initial burden, the burden shifts to the nonmovant to "set forth specific facts showing there is a genuine issue for trial". *Anderson v. Liberty Lobby,* 477 US 242, 256 (1986). The nonmovant may not rest on mere allegations or denials in its pleadings. *Anderson,* 477 US at 256. Rather, the nonmovant must give "specific facts that would be admissible in evidence in the event of trial which a rational trier of fact could find for the nonmovant". *Adler v. Walmart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998).

3

## II. Preference Avoidance Under 11 U.S.C. § 547(b)

When a debtor pays a creditor prior to filing bankruptcy, the Bankruptcy Code allows for the avoidance of such payments under certain circumstances as set forth in 11 U.S.C. § 547(b):

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The burden is on the Plaintiff to prove all elements of a preference. 11 U.S.C. § 547(g).

The parties agree that the Plaintiff has met his burden to establish the elements of 11 U.S.C. §547(b), except whether the Transfer was made for or on account of an antecedent debt owed by the Debtor before the Transfer was made, as required by 11 U.S.C. §547(b)(2).[3] The Plaintiff asserts that Haimark Line had a legal obligation to refund the overpayment to Vantage, such that Haimark Line owed an antecedent debt to Vantage. Vantage asserts that Haimark Line made an advance payment which was not made for or on account of an antecedent debt.

At oral argument, both parties agreed that resolution of the matter was appropriate on summary judgment.

The Bankruptcy Code does not define the term "antecedent debt". But "debt" is defined as "liability on a claim," 11 U.S.C. § 101(12), and a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," 11 U.S.C.§ 101(5)(A). The word "antecedent" is defined as "existing or occurring before in time or order often with consequential effects." Webster's Third New International Dictionary, p. 91 (1981).

---

[3] In its response, Vantage claims that it has further defenses to the preferential transfer claim which were set forth in its amended answer (Doc. No. 45, p. 2). However, Vantage has failed to identify such defenses or provide any evidence in support of such defenses in its response or at oral argument.

A debt is "antecedent" for purposes of 11 U.S.C. §547(b) if it was incurred before the allegedly preferential transfer. Alan N. Resnick & Henry J. Sommer, 5 *Collier on Bankruptcy* ¶ 547.03[4] (16th ed. 2010). A debt is incurred when the debtor becomes legally obligated to pay. *Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys., Inc.)*, 474 F.3d 1063, 1066-67 (8th Cir. 2007). The question on antecedence is "purely a matter of timing." *Minchella v. Beaver (In re Beaver)*, No. 88 A 0599, 1989 WL 85384 (Bankr. N.D. Ill. July 28, 1989). The test for when a debt is incurred is whether the debtor is legally obligated to pay. *Harrah's Tunica Corp. v. Meeks (In re Armstrong)*, 291 F.3d 517, 525 (8th Cir. 2002).

The Seventh Circuit determined that the term "antecedent debt" is to be construed broadly, and when a creditor has a claim against a debtor, the debtor has incurred a debt to the creditor. *Energy Co-op. Inc. v. Socap Int'l, Ltd. (In re Energy Co-op. Inc.)*, 832 F.2d 997, 1001 (7th Cir. 1987). Also, according to the case of *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-MD-2296 (RJS), 2018 WL 6329139, at *13 (S.D.N.Y. Nov. 30, 2018) (citation omitted), *reconsideration denied,* No. 11MD2296 (DLC), 2019 WL 549380 (S.D.N.Y. Feb. 12, 2019), the trend in the case law is to interpret the phrase "antecedent debt" broadly, which is supported by the statutory text.

The Plaintiff relies on the cases of *Meiburger v. Reston Hospital Center (In re Twin Contracting Corp.)*, 582 B.R. 400 (Bankr. E.D. Va. 2017); *Sarachek v. Chitrik (In re Agriprocessors, Inc.)*, No. ADV 10-09058, 2011 WL 3033710 (Bankr. N.D. Iowa July 22, 2011); and *Dietz v. Langlie (In re Farr)*, 407 B.R. 343 (B.A.P. 8th Cir. 2009), for the proposition that a refund due as a result of an overpayment, made by a debtor to a creditor, is made for or on account of an antecedent debt.

Vantage relies on the cases of *Pirinate Consulting Group, LLC v. Kadant Solutions Division (In re NewPage Corp.)*, 569 B.R. 593 (D. Del. 2017); *Dots, LLC v. Capstone Media (In re Dots, LLC)*, 533 B.R. 432 (Bankr. D.N.J. 2015); and *Rosenberg v. Rollins, Burdick, Hunter Co. (In re Presidential Airways, Inc.)*, 228 B.R. 594 (Bankr. E.D. Va. 1999), for the proposition that advance payments made by a debtor to a creditor for goods or services to be provided in the future are not made for or on account of an antecedent debt.

The dispositive issue presented to the Court is whether the overpayment made by Vantage can be characterized as an advance payment. If so, the Plaintiff's claim for recovery of a preferential payment fails, and, in turn, so does the Plaintiff's claim for disallowance of Vantage's claim.

The Plaintiff argues that once the overpayment by Vantage was received by Haimark Line, a claim arose in favor of Vantage requiring a repayment or refund, and that this obligation constitutes an antecedent debt. The Plaintiff cites the principal cases to support the argument.

In the case of *In re Twin Contracting Corp.*, the creditor made an overpayment to the debtor for previously billed services which had already been paid. A check to the creditor for the refund was issued but never cashed because it was lost. The check was reissued by the debtor and cashed by the creditor during the preference period. The

Court held that the defendant became a creditor of the debtor when the overpayment was made because the refund was made in satisfaction of the debtor's legal obligation to repay the funds, an antecedent debt. *Twin Contracting*, 582 B.R. at 404.

In the case of *In re Agriprocessors*, the creditor made an unsolicited wire transfer in the amount of $100,000 to the debtor, hoping to induce a business relationship. The debtor refunded the $100,000 to the creditor, and the Chapter 7 trustee sued to recover the transfer of the $100,000 as a preferential transfer. The Court found that the payment was not a gift, and that the creditor expected repayment either by a shipment of product by the debtor or a refund. Therefore, the payment was made in satisfaction of the debtor's legal obligation to repay and was for or on account of an antecedent debt. *Agriprocessors*, 2011 WL 3033710, at *5.

In the case of *In re Farr*, the creditor transferred $123,195 to the debtor's bank account. The amount that should have been transferred was $23,195. After the debtor discovered the mistake six months later, it directed its bank to credit $90,000 towards the creditor's line of credit. The Bankruptcy Court found that because the funds were mistakenly transferred into the debtor's account, it imposed a constructive trust, and it held that there was no transfer of the debtor's property and therefore no preference.

The Eighth Circuit Bankruptcy Appellate Panel reversed the imposition of a constructive trust, determining that under Minnesota law, mere mistake is insufficient for the imposition of a constructive trust. The BAP further held that the transfer was a preferential transfer because the claim that arose for the repayment of the mistakenly transferred money was an antecedent debt. *Farr*, 407 B.R. at 353.

In each of the three cases relied upon by the Plaintiff, the overpayment was determined to have caused an obligation for repayment at the time the overpayment was received. In each of the three cases, the repayment was found to have been made for or on account of an antecedent debt and avoidable as a preferential transfer.

On the other end of the spectrum, Vantage relies on a line of cases holding that advance payments cannot be avoided as preferential transfers. In each case, no debt existed at the time of the payment, so the payment in question was not made for or on account of an antecedent debt and not avoidable as a preferential transfer.

In the case of *In re NewPage Corp.*, the debtor made a transfer of $351,709 to the creditor as an initial deposit for the manufacture of gravity draining structures. The District Court affirmed the ruling of the Bankruptcy Court that the prepayment was not avoidable as a preference because it was not made for or on account of an antecedent debt. The District Court reasoned there was no debt owed to the creditor at the time of the advance payment. Under the terms of the agreement between the parties, an advance payment was required, and the creditor held no right to payment until services were actually performed. *NewPage*, 569 B.R. at 604. Thus, the case holds that advance payments made by a debtor to a creditor for future goods or services to be provided in the future are not preferences because the transfer from the debtor to the creditor is not for or on account of antecedent debt.

In the case of *In re Dots, LLC,* the debtor made payments totaling $872,425 to the creditor for marketing services. Of the total amount transferred, only $4,825 represented payment for services rendered. The balance was for future media buys/placement. The Court held that the payments were not made for or on account of antecedent debt because the agreement between the parties required prepayment and advance approval of media buys and placements. The Court found that the creditor was not entitled to compensation until the agreed upon services were performed and that an invoice alone does not create a payment obligation. *Dots*, 533 B.R. at 440.

Finally, in the case of *In re Presidential Airways,* the trustee sought to avoid payments totaling $242,871 made to an insurance broker under the terms of an agreement between the parties. The funds were held in an escrow account and used by the insurance broker to pay insurance premiums of the debtor and insurance broker fees. The Court found that the transfer was not for or on account of an antecedent debt because, if the payments had not been made, the insurance broker would not have had a claim against the debtor. When the debtor prepaid the insurance broker, the debtor did not owe the insurance broker anything. The Court ruled:

> In the case at bar, if the debtor had not made the payments in dispute, RHH would have no claim against the debtor because RHH had not rendered services to the debtor at the time the payments were made. Furthermore, RHH would not have a claim against the debtor if the debtor failed to make the insurance payments.

*Presidential Airways*, 228 B.R. at 958.

The above cases can be reconciled, and the cases cited by Vantage are factually distinguishable from the facts of this case. In each case cited by Vantage, a payment was made by a debtor, under the terms of a specific agreement, to a creditor. In exchange, the creditor agreed to provide future goods or services. *NewPage* involved the future production of custom machinery. *Dots* involved the future purchase of advertising media. *Presidential Airways* involved deposits for future insurance premiums. In each case, the particular creditor held no right to payment until the goods or services subject to the respective agreement were provided to the debtor. Because the creditors received advance payments, they were not similarly situated with creditors who had been paid for goods or services previously provided to the debtor, and the payments could not be avoided as preferential. It is also true that had the goods or services not been provided as required under the terms of the respective agreements, a claim would arise on behalf of the debtor to avoid the payment as a constructive fraudulent transfer.

Here, Vantage (the creditor) made payments to Haimark Line (the debtor) pursuant to an agreement that required the debtor to provide future services. Under the agreement, Haimark Line, not Vantage, was required to provide the future services. Upon the filing of the bankruptcy case, Vantage held a claim against the estate for the value of any services that were not provided.

The same analysis applies when Vantage overpaid the debtor. Once the overpayment occurred, the debtor had a legal obligation to repay that amount to Vantage,

and Vantage became the debtor's creditor. It is axiomatic that had Haimark Line filed its bankruptcy case prior to making the refund, Vantage would hold a claim against the estate for the overpayment. *See Twin Contracting*, 582 B.R. at 404 (defendant became a creditor as soon as it overpaid the debtor, and the creditor obtained a claim to recover the overpayment).

This case does not involve an advance payment by a debtor to a creditor for future goods and services to be provided. Rather, it involves a refund by a debtor of an overpayment to a creditor. While the distinction seems thin, it turns on the purpose of the transfer. If the transfer was made by a debtor to a creditor to refund an overpayment, the cases uniformly hold that it was made for or on account of an antecedent debt. On the other hand, if the transfer was an advance payment made by a debtor to a creditor for goods or services to be provided in the future, there is no antecedent debt owed to the creditor.

The Court finds that the Plaintiff has met his burden and proven that the Transfer is avoidable under 11 U.S.C. § 547(b). The Transfer meets the above statutory elements, and the Plaintiff is entitled to the presumption of insolvency in the ninety-day period prior to the bankruptcy filing under 11 U.S.C. § 547(f).

## CONCLUSION

Accordingly, it is

ORDERED that Vantage's Motion for Summary Judgment (Doc. No. 37) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment (Doc. No. 42) is GRANTED. Judgment shall enter in favor of the Plaintiff Jeffrey Weinman and against Defendant Vantage Travel Services, LLC in the amount of $474,718.20 under 11 U.S.C. §§ 547(b) and 550(a)(1).

IT IS FURTHER ORDERED that pursuant to 11 U.S.C. § 502(d), absent an appeal, Vantage shall have sixty days from the date of the entry of judgment to turn over the preference amount to the Plaintiff, failing which the Proof of Claim shall be disallowed.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

IT IS FURTHER ORDERED that the final pretrial conference scheduled for May 7, 2019, at 11:00 a.m. is hereby vacated.

Dated this 20th day of March, 2019.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge